IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **CEDRIC LAMAR JACKSON,** | : | **MOTION TO VACATE** |
| **Movant,** | : | **28 U.S.C. § 2255** |
| | : | |
| **v.** | : | **CRIMINAL INDICTMENT NO.** |
| | : | **1:05-CR-0479-RWS-AJB-3** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | **CIVIL FILE NO.** |
| | : | **1:10-CV-0754-RWS-AJB** |

### UNITED STATES MAGISTRATE JUDGE'S
### FINAL REPORT AND RECOMMENDATION

The matter is before the Court on the Eleventh Circuit Court of Appeals' remand, [Doc. 696], of Movant's motion to vacate, [Doc. 452], and on Respondent's motion to dismiss based on lack of jurisdiction, [Doc. 714]. For the reasons stated below, it is recommended that the motion to dismiss be denied and that the motion to vacate, as remanded, and a certificate of appealability also be denied.

## I.   Background

On May 1, 2006, Movant pleaded guilty to a sex trafficking conspiracy, as charged in the superseding indictment in this case. (Superseding Indictment at 3, ECF No. 117; Guilty Plea and Plea Agreement, ECF No. 143-1.) By judgment entered on March 18, 2008, the Court imposed five years of imprisonment, followed by three years of supervised release. (J., ECF No. 369.)

AO 72A
(Rev.8/8
2)

Movant appealed, and on December 17, 2008, the Eleventh Circuit Court of Appeals found that a review of the record revealed no arguable issues of merit, granted appellate counsel Stuart M. Mones's motion to withdraw, and affirmed the judgment against Movant.  (J. of USCA, ECF No. 442.)  On March 9, 2010, Movant submitted for filing his instant motion to vacate in which he asserted that his guilty plea is invalid based on ineffective assistance of counsel.  (Mot. to Vacate at 4-5, ECF No. 452.)  The District Court initially denied Movant's motion to vacate.  (Order Denying Mot. to Vacate, ECF No. 494.)[1]

Movant appealed, and on March 8, 2012, the Eleventh Circuit Court of Appeals vacated and remanded on Movant's claim that his plea was unknowing and involuntary based on ineffective assistance of counsel for incorrectly advising him that he would not have to register as a sex offender based upon his guilty plea.  (USCA Op. at 3-4, ECF No. 696)[2]; *Jackson v. United States*, 463 Fed. Appx. 833, 834 (11th Cir. Mar. 8, 2012) (Appellate Case No. 10-14484) (remanding motion to vacate).

---

[1]    In his motion to vacate, Movant also asserted a claim of actual innocence and other matters, which are no longer before the Court.  (*See* Mot. to Vacate at 7; Order denying Mot. to Vacate at 9.)

[2]    There has been some delay in resolving the remand in that the Eleventh Circuit Court of Appeals' Opinion was not properly docketed in this case until April 10, 2017.  (*See* docket entry 696 and entry dated 4/10/2017.)

The matter was submitted to the undersigned for an evidentiary hearing and a Report and Recommendation.  (Order Referring Case, ECF No. 702.)  Respondent filed a motion to dismiss for lack of jurisdiction on the grounds that Movant no longer was serving any sentence or term of supervised release.  (Mot. to Dismiss for Lack of Jurisdiction, ECF No. 714).  A hearing was held on January 4 and February 27, 2018, and the parties have submitted their post-hearing briefing.  (Mot. to Vacate Hr'g Tr. I, ECF No. 717; Mot. to Vacate Hr'g Tr. II, ECF No. 723; Mov't Post-Hr'g Br., ECF No. 726; Resp't Post-Hr'g Resp., ECF No. 730; Mov't Post-Hr'g Reply, ECF No. 736.)

## II.   <u>Motion to Dismiss for Lack of Jurisdiction</u>

In the motion to dismiss, Respondent argues that this action should be dismissed because Movant's supervised release was terminated in January 2013 and because relief under § 2255 is unavailable for a completed sentence.  (Mot. to Dismiss for Lack of Jurisdiction at 2-5).  Respondent now admits that the Court has § 2255 jurisdiction as Movant was "in custody" at the time that he filed his motion to vacate.  (Resp't Post-Hr'g Resp. at 14-15 (citing *Malloy v. Purvis*, 681 F.2d 736 (11th Cir. 1982)).)

Respondent's concession is correct.  The federal court has jurisdiction over a § 2255 challenge to a conviction and sentence as long as the federal prisoner was in

3

custody at the time he filed his § 2255 motion.  *See Malloy*, 681 F.2d at 738 ("Malloy's unconditional release from custody while his appeal of the district court's first dismissal was pending does not defeat the jurisdiction previously established."); *Castle v. United States*, 399 F.2d 642, 644 (5th Cir. 1968) (same in regard to § 2255 motion).[3] Accordingly, the undersigned **RECOMMENDS** that Respondent's motion to dismiss for lack of jurisdiction be **DENIED**.

## III.   Discussion of Remanded Issues

### A.   Additional Background

In October 2005, the grand jury originally indicted Movant on (1) a conspiracy count for, among other things, conspiring to traffic young women for commercial sex acts, in violation of 18 U.S.C. § 1591(a), and (2) a substantive count of sex trafficking, in violation of 18 U.S.C. § 1591, which at the time carried a fifteen year mandatory minimum and a forty year maximum term of imprisonment.  (Indictment at 1-3, 16-17, ECF No. 1; *see* Mot. to Vacate Hr'g Tr. I at 20.)  On October 25, 2005, on motion by

---

[3]     Decisions of the Fifth Circuit rendered on or before September 30, 1981, are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

4

the government, the substantive count against Movant was dismissed without prejudice.[4]  (Gov't Mot to Dismiss Count and Order Granting Same, ECF No. 44.)

On April 12, 2006, the grand jury returned a superseding indictment against Movant, charging him with one count of conspiracy for, among other things, conspiring to traffic young women for commercial sex acts, in violation of 18 U.S.C. § 1591(a). (Superseding Indictment at 3.)  On May 1, 2006, Movant, represented by Mr. Bruce Steven Harvey and Jennifer S. Hanson, pleaded guilty to the conspiracy count.  (Guilty Plea and Plea Agreement; ECF No. 143-1)  The plea agreement shows, among other things, that Movant understood that he was subject to a maximum prison term of five years, that the government would recommend that he receive an adjustment for acceptance of responsibility, that Movant would cooperate, that the government would not bring any additional charges against Movant related to the charge to which he was

---

[4]     The substantive count was based on crimes committed in August 2004. (Indictment at 16.)  The charge was dismissed without prejudice, and Movant was subject to being re-indicted on the substantive count through approximately August 2009.  *See* 18 U.S.C. § 3282(a) (requiring that indictment be found within five years of a non-capital offense being committed); *see Chambliss v. United States*, 384 Fed. Appx. 897, 898 (11th Cir. June 23, 2010) ("After the district court dismissed the indictment without prejudice, the Government would have re-indicted him on the same charges. If the statute of limitations had run by the time that the indictment was dismissed, the government still would have had six months to obtain a new indictment.") (citing 18 U.S.C. § 3288.)

5

pleading guilty, and that "in exchange for his cooperation, the Government has agreed not to bring additional charges against [Movant], so that he is exposed to lower penalties than he otherwise would be." (*Id*. at 2-4.)

At the plea hearing, counsel for the government stated as follows –

The court will notice that the government did seek a superseding indictment, because we had essentially an agreement in principle with [Movant], we didn't charge him with any of the substantive counts that are alleged in the indictment.

Consequently, the maximum sentence under this plea agreement is essentially a five-year term of imprisonment. We are recommending acceptance of responsibility. [Movant] has agreed to truthfully and completely cooperate with the government, and in exchange for his cooperation we are willing to essentially give him 1 B 1.8 immunity in which any self-incriminating information that was furnished to us that was previously unknown is not going to be used against him.

We are also agreeing not to bring any additional charges against him in connection with this particular matter because, as I said, we forego – we have foregone our opportunity to bring the additional substantive charges against him. He understands, of course, that he is being exposed to lower penalties than he otherwise would be . . . .

(Plea Hr'g Tr. at 4-5, ECF No. 401.)

At the hearing, the parties submitted the factual basis for the plea, and counsel for the government explained that "there were certain things [Movant] was willing to agree to, there were certain things that [Movant] appeared to have difficulty with. And

6

the ten paragraphs that we've set forth in the factual basis for the plea are the things in which both sides were able to come to agreement 100 percent[.]" (*Id*. at 6; *see also* Factual Basis for Plea, ECF No. 143-2.) The government presented what it would have to prove to show a sex trafficking conspiracy, and Movant stated that he had no questions. (Plea Hr'g Tr. at 9-10.) The Court went over with Movant the rights that he was waiving by pleading guilty and the punishment to which he was exposed, and Movant stated that he understood and further stated that the factual basis for his guilty plea were correct.[5] (*Id*. at 10-14, 17.) The Court accepted Movant's guilty plea. (*Id*. at 18.) Movant then inquired whether he could ask the Court a question, and Ms. Hanson requested that Movant first talk with her. (*Id*.) Thereafter, Ms. Hanson informed the Court that the matter had been cleared up. (*Id*.) The Court stated, "Is that right, [Movant]? I'll be glad to answer anything I can, if you have a question." (*Id*.) Movant responded, "No, that is fine, Sir." (*Id*.) The Court approved Respondent's request to postpone sentencing until after trial of Movant's co-defendant. (*Id*.)

---

[5]    Movant asserted at the hearing on remand that the factual basis was incorrect on several matters. (Mot. to Vacate Hr'g Tr. I at 13-14, 22-27.) The correctness of the factual basis is not addressed because that issue is not before the Court and, further, Movant stated under oath at his plea hearing that the factual basis was correct.

7

Movant's Presentence Report shows that he was subject to a statutory maximum sentence of sixty months and a guidelines range of 235 to 293 months, based on a criminal history category of IV and total offense level of thirty-five (a thirty base offense level, plus four levels under U.S.S.G. §2A3.1(b)(1) because the conduct involved the use of force/threat, plus four levels under § 2A3.1(b)(5) because the conduct involved abduction of the victim, less three levels for acceptance of responsibility).   (PSR at 12-15, 34 (Gov't Ex. 4, filed under seal), ECF No. 716.) Represented by Mr. Mones at sentencing, Movant objected to the enhancements under § 2A3.1, and the Court overruled those objections.   (Sentencing Tr. II at 38-39, ECF No. 400).   As stated earlier, by judgment entered on March 18, 2008, the Court imposed five years of imprisonment, the statutory maximum, followed by three years of supervised release,[6] and on December 17, 2008, the Eleventh Circuit Court of Appeals affirmed the judgment against Movant.   (J.; J. of USCA.)

On March 9, 2010, Movant submitted for filing his instant motion to vacate in which he asserts that his guilty plea is invalid based on ineffective assistance of counsel in that, after Movant informed counsel that he would not accept a guilty plea if he was

---

[6]     The judgment against Movant contained no special conditions of supervised release in regard to sex offender registration.

required to register as a sex offender, counsel advised him that his pleading guilty plea to conspiracy would not require him to register and assured him "that the plea would state [he must register as a sex offender] if that was the case."  (Mot. to Vacate at 4-5.)

On March 17, 2010, Movant was released on supervision.  (*See* Revocation Hr'g Tr. at 30-31, 34, ECF No. 556.)  On June 25, 2010, Movant was arrested and detained after his Probation Officer petitioned that Movant's supervised release be revoked based on his failure to comply with the terms of release as set forth in his criminal judgment.  (Pet. of June 25, 2010, ECF No. 465; Arrest Warrant, ECF No. 467; Order of Temp. Det., ECF No. 473.)  On June 30, 2010, Petitioner was released pending a revocation hearing and agreed to certain conditions of release, which included home detention and to participate in "a psychosexual evaluation and counseling if deemed necessary and comply with the conditions of the sex offender contract under the guidance and supervision of the U.S. Probation Officer."  (Order Setting Conditions of Release at 5, ECF No. 477.)  Petitioner later was detained for violating the terms of his release pending his revocation hearing.  (Order of Det., ECF No. 491.)

The Probation Officer submitted an additional petition, filed on July 27, 2010, asking that Movant's supervised release be revoked, for the reasons stated in its earlier petition, and further requesting that Movant's conditions of supervised release be

9

modified to require home confinement for 180 days and "to include that the defendant shall participate in the mental health aftercare program including a psychosexual evaluation and counseling if deemed necessary and comply with the conditions of the sex offender contract under the guidance and supervision of the U.S. Probation Officer." (Pet. of July 27, 2010 at 1-2, ECF No. 483.)  The Probation Officer attached a signed Waiver of Hearing to Modify Conditions, signed by Movant and dated June 30, 2010.  (*See id.* at 2 and Attach.)  Therein, Movant waived his right to the assistance of counsel in agreeing to a modification to the conditions of supervised release and agreed to the modification quoted above. (*Id.*) On July 23, 2010, the Court signed the modification order.  (*Id.* at 2.)  An unsigned copy of the sex offender contract states, "If applicable, I must register as a sex offender . . . ." (Gov't Ex. 3, ECF No. 532 (citing O.C.G.A. § 42-01-12 and 18 U.S.C. §§ 3563(a)(8), 3583(d).)[7]

---

[7]   Subsequent to Movant's guilty plea and before his sentencing, the Sex Offender Registration and Notification Act (SORNA) was passed. *See United States v. Dean*, 604 F.3d 1275, 1276 (11th Cir. 2010) ("Congress enacted the Sex Offender Registration and Notification Act, which became effective on July 27, 2006."). Section 3563(a)(8) of Title 18 dictates – "[t]he court shall provide, as an explicit condition of a sentence of probation – . . . for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act."  Section 3583(d) of Title 18 dictates – "[t]he court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act."

10

Subsequently, the Probation Officer added as additional reasons for revocation, Petitioner's failure to comply with home confinement and failure to comply with the sex offender contract. (Pet. of Aug. 23, 2010, ECF No. 488; Revocation Hr'g Tr. at 4.)

On September 9, 2010, the District Court denied Movant's motion to vacate. (Order Denying Mot. to Vacate.)

At the revocation hearing in January 2011, the Probation Officer testified, among other things, that Movant had stated that his attorney had told him he would not have to register as a sex offender. (Revocation Hr'g Tr. at 6.)[8] On January 21, 2011, the Court revoked Movant's supervised release (citing his violation of home confinement, criminal history, lack of cooperation with his Probation Officer, drug use, and negative attitude toward work which entailed labor) and imposed a two-year term of imprisonment. (Order Revoking Supervised Release, ECF No. 534.)

On appeal from the Court's initial denial of his motion to vacate, Movant asserted that sex offender registration automatically followed his offense of conviction

_____

[8]      Counsel Nicole M. Kaplan, who represented Movant in his revocation proceedings and who represents Movant in the instant proceedings, explained during the revocation hearing that, close in time to his release, Movant had "discovered that he would have to register as a sex offender, and filed a [motion to vacate] asserting that he had been misinformed about what those consequences of his plea would be." (Revocation Hr'g Tr. at 30-31.)

11

and that counsel was ineffective for affirmatively misadvising Movant that he would not have to register.  Appellant's Br. at 5-6, *United States v. Jackson*, No. 10-14484 (11th Cir. Mar. 8, 2012).  Movant cited to federal law (42 U.S.C. § 16911, SORNA, transferred to 34 U.S.C. § 20911) and Georgia law (O.C.G.A. § 42-1-12), without any specific argument as to their application to Movant's crime of conviction.  *Id.* at 8. Movant did not raise any issue as to whether any other state would require him to register as a sex offender.

On March 8, 2012, the Eleventh Circuit Court of Appeals vacated and remanded on Movant's claim that his plea was unknowing and involuntary based on ineffective assistance of counsel in advising him that he would not have to register as a sex offender based upon his guilty plea.  *Jackson*, 463 Fed. Appx. at 835.  The Eleventh Circuit stated as follows –

> [T]he district court did not reach the factual determination of whether [Movant's] counsel misadvised him regarding the sex offender registration consequences of pleading guilty.  Moreover, although [Movant] claims he would not have pled guilty but for counsel's alleged misadvice, the district court did not reach the factual determination of whether rejecting the plea bargain would have been rational under the circumstances.  *See Padilla*, 130 S. Ct. at 1485 [9] ("[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

---

[9]     *Padilla v. Kentucky*, 559 U.S. 356 (2010).

> If Jackson cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail. Additional fact-finding by the district court is therefore required. . . . If [Movant] can meet his burden on these factual issues, the court should then examine whether *Padilla* is retroactively applicable here,[10] and, if so, determine how *Padilla* and *Bauder*[11] apply to the facts as established.

*Jackson*, 463 Fed. Appx. at 835.

The District Court has asked the undersigned to determine whether Movant states

an ineffective assistance of counsel claim on consideration of the following issues:

(1) whether counsel misadvised Movant on sex offender registration requirements and,

---

10      The court in *Padilla* held that counsel is deficient if he fails to provide his client with "available advice about an issue like deportation" – " 'the equivalent of banishment or exile[.]' "  *Id*. at 371, 373 (quoting *Delgadillo v. Carmichael*, 332 U.S. 388, 390-91 (1947)).  The court additionally stated, "When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.  But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear."  *Id*. at 369.

11      *Bauder v. Dep't of Corr.*, 619 F.3d 1272, 1275 (11th Cir. 2010).  The court in *Bauder* held that, although counsel is not deficient for failing to anticipate changes in the law, counsel is deficient if he affirmatively misadvises his client, under existing law which is being litigated, that his guilty plea will *not* expose him to civil commitment instead of advising his client that the law is unclear or that there is a possible risk of civil commitment.  *Id*. at 1274-75.

13

(2) if counsel misadvised Movant, whether it was rational in the circumstances for Movant to accept the plea agreement.  (Order Referring Case, ECF No. 702.)

At the hearing on remand, Movant testified that Mr. Harvey discussed sex offender registration with him and told him that he would not have to register based on the offense to which he was pleading guilty, that whether or not he would have to register was very important to him, and that he would rather have gone to trial than have to register as a sex offender.  (Mot. to Vacate Hr'g Tr. I at 8-9.)  Movant also testified that, at his guilty plea hearing, he ventured to ask the Court about registration but asked Ms. Hanson, who also informed Movant that he would not have to register.[12] (*Id.* at 9-10.)  Movant stated that he did not discuss sex offender registration with his sentencing and appellate counsel Mr. Mones.  (*Id.* at 11.)  Movant also testified that in March 2017, his name had been removed from the Georgia Sex Offender Registry.[13]

---

[12]     The transcript of Movant's guilty plea hearing shows that Movant had a question for the Court, which he instead posed to counsel.  (Plea Hr'g Tr. at 18.)

[13]     Evidence admitted at the hearing shows that legal counsel for the Georgia Bureau of Investigation (GBI) reviewed Movant's file and determined that Movant was not required to register under Georgia law and that, in March 2017, Movant was removed from the Georgia Sex Offender Registry.  (Gov't Hr'g Exs. 2, 5, 6, ECF Nos. 716, 722.)  Additionally, the official website for the GBI Sex Offender Registry and the official website for the National Sex Offender Public Website do not show Movant, Cedric Lamar Jackson, as a sex offender.  *See* https://gbi.georgia.gov/georgia-sex-offender-registry (last visited July 27, 2018);

14

(*Id*. at 39.)  Movant testified that his mother lived in Michigan and that, if he moved to Michigan, he did not know whether he would have to register as a sex offender in Michigan.  (*Id*. at 42.)  Movant testified that his child lived in Alabama and that, if he moved to Alabama, he did not know whether he would have to register as a sex offender in Alabama.  (*Id*. at 42-43.)  Movant further testified that he did not know what his registration obligations would be in Florida or California.  (*Id*. at 43.)

Mr. Harvey testified that he could not recall specifically whether he advised Movant that he would not have to register as a sex offender.  (*Id*. at 50.)  Mr. Harvey testified that he had advised some clients that they did not have to register and that, in a post-*Padilla* case (*Padilla* was decided on March 31, 2010), he specifically recalled doing so and making it part of the plea agreement.  (*Id*. at 50, 52.)  Ms. Hanson testified that she did not recall discussing sex offender registration with Movant.  (Mot. to Vacate Hr'g Tr. II at 64-65.)

## B.    Parties' Arguments

Movant argues that he has credibly asserted that counsel affirmatively advised him that he would not have to register, that sex offender registration is sufficiently onerous to require counsel to advise his client on the matter, and that Movant's

_____

www.nsopw.gov (follow "Quick Search" hyperlink) (last visited July 27, 2018).

counsel's advice was deficient.  (Mov't Post-Hr'g Br. at 5-8.)  Movant further argues that counsel's deficient advice caused prejudice because he remains subject to SORNA registration requirements and because he would have gone to trial if he had known he would have to register.[14]  (*Id*. at 8-9.)  Movant contends that he has family in Michigan and Alabama and any move to those states, or other states, would subject him to SORNA registration requirements and the relevant state registration requirements. (*Id*. at 9-10.)[15]   Movant further argues that, if he had known he was subject to registration requirements, turning down the guilty plea and going to trial would have been rational because he received the statutory maximum for the sole count on which he was charged and because the accuracy of the prosecution's statement that the substantive count was dismissed based on Movant's cooperation was uncertain. (*Id*. at 11.)

---

[14]      SORNA registration requirements are (excluding time in custody or civil commitment) fifteen years for a tier I sex offender, twenty-five years for a tier II sex offender, and life for a tier III sex offender.  *See* 34 U.S.C. § 20915(a).  Movant states that he is a tier I sex offender, subject to fifteen years of registration.  (Mov't Post-Hr'g Reply at 6.)

[15]      Movant does not identify the particular sections of Michigan or Alabama law which would require him to register based upon his particular conviction.  (*See* Mov't Post-Hr'g Br. at 9-10.)

16

Respondent argues (1) under *Blaik v. United States*, 161 F.3d 1341 (11th Cir. 1998), that § 2255 affords relief only for those who claim the right to be released and that Movant cannot use § 2255 to seek relief from a noncustodial portion of his sentence (sex offender registration requirements) and (2) that Movant's challenge to the collateral consequences of sex offender registration is now moot as he is not required to register under Georgia law and whether he will be required to register in another state, should he move, is speculative.  (Resp't Post-Hr'g Resp. at 15-16.)[16] Respondent further argues that the record is insufficient to show that Mr. Harvey discussed sex offender registration with Movant or advised Movant that he would not have to register and insufficient to show that Ms. Hanson discussed sex offender registration with Movant or misadvised him.  (*Id*. at 19-21.) Respondent further argues that Movant fails to show prejudice based on only his own *post hoc* claim that Mr. Harvey and Ms. Hanson both told him that he would not have to register (which

---

[16]     Respondent also argues that Movant is not entitled to coram nobis relief (Resp't Post-Hr'g Resp. at 16-18.)  Respondent is correct in that coram nobis relief is unavailable as § 2255 is available for Movant's claim of ineffective assistance of counsel.  *See United States v. Brown*, 117 F.3d 471, 475 (11th Cir. 1997) ("[A]n available statutory habeas remedy precludes coram nobis relief. . . . If Brown was 'in custody' within the meaning of § 2255 when he filed his appeal, then the statutory remedies of that provision were available to him, and coram nobis relief was unavailable as a matter of law.").

17

neither attorney remembered) and that but for such advice he would have rejected the plea offer.  (*Id*. at 22-23.)  Respondent argues that it would not have been rational to reject the plea offer and proceed to trial, lose the benefits of the plea agreement, and risk exposure to a sentence of not less than fifteen and up to forty years instead of the statutory maximum of five years, which he received by pleading guilty.  (*Id*. at 25-26.) Respondent also argues that neither *Padilla* nor *Bauder* require counsel to provide advice on the collateral consequence of sex offender registration.  (*Id*. at 27.)

Movant replies that his claim is cognizable under § 2255 because he seeks to be released from his plea and conviction on the grounds that they are invalid based on ineffective assistance of counsel and that his claim is not moot as he is subject to SORNA registration requirements for fifteen years and will be required to register according to relevant state law requirements if he crosses state lines to another jurisdiction.  (Mov't Post-Hr'g Reply at 1, 5-7.)  Movant further replies that the dismissal of the substantive count in October 2005, months before he was re-indicted and pleaded guilty, belies Respondent's claim that the substantive count was dismissed due to an agreement with the government.  (*Id*. at 2.)  Movant further argues that under *Padilla* and *Bauder* he is entitled to relief based on counsel's incorrect advice that he would not have to register as a sex offender.

18

### C.     Law and Recommendation

#### 1.     *Blaik* and Mootness

As a preliminary matter, Respondent's arguments based on *Blaik* and mootness

fail.  The Court in *Blaik* held that § 2255 affords relief for those who claim the right

to be released and that § 2255 could not be used to challenge *only* the restitution or

non-custodial portion of a sentence.  *Blaik*, 161 F.3d at 1342-43.  Here, Movant does

not seek to challenge *only* sex-offender registration.  Movant challenges his conviction

and sentence, and *Blaik* does not apply.  Further, as discussed below, it appears that

Movant remains subject to SORNA's registration requirements, and his § 2255 motion

is not moot.  *See Malloy* 681 F.2d at 738 (stating that the retention of "a substantial

stake in the judgment of conviction which survives the satisfaction of the sentence

imposed on him" prevents a collateral challenge from becoming moot (quoting

*Carafas v. Lavallee*, 391 U.S. 234, 237 (1968)) (internal quotation marks omitted)).

#### 2.     Whether Movant's Guilty Plea was Rendered Invalid Based on Ineffective Assistance of Counsel in Regard to Sex Offender Registration

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct

a federal sentence that was imposed in violation of the Constitution or laws of the

United States or was imposed by a court without jurisdiction, exceeds the maximum

19

sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. A constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts. *Massaro v. United States*, 538 U.S. 500, 505-09 (2003).

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced her. *Id.* at 690-92. To succeed on a claim that a guilty plea was obtained in violation of the Sixth Amendment right to counsel, a movant must show that "(1) counsel's advice was deficient; and (2) 'but for counsel's errors, [there is a reasonable probability that] he would not have pleaded guilty and would have insisted on going to trial.' " *Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)), *cert. denied*, _ U.S. _, 136 S. Ct. 798 (2016). A movant's "bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*." *Roach v. Roberts*, 373 Fed. Appx. 983, 985 (11th Cir. Apr. 20, 2010) (citing *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985)). "Courts should not upset a plea solely

AO 72A
(Rev.8/8
2)

because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, _ U.S. _, _, 137 S. Ct. 1958, 1967 (2017).  "[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015) (quoting *Padilla*, 559 U.S. at 372) (internal quotation marks omitted).

Here, analysis of counsel's assistance requires a proper understanding of Movant's registration obligations under SORNA and Georgia law, which are as follows.  SORNA, originally located at 42 U.S.C. § 16901 et seq., and now located at 34 U.S.C. § 20901 et seq., became effective on July 27, 2006.  *See Dean*, 604 F.3d at 1276.  As of February 28, 2007, SORNA has been applied retroactively to all sex offenders.  *United States v. Madera*, 528 F.3d 852, 856, 858-59 (11th Cir. 2008).  Under SORNA, a sex offender is an individual convicted of a "sex offense."  34 U.S.C. § 20911(1).  Federal Sex Offender registration law categorizes a sex trafficking conspiracy involving a non-custodial adult victim as a "sex offense" for purposes of registration, provided the sexual conduct was not consensual. 34 U.S.C. § 20911(5)(A)(iii), (v) and (C).

21

Here, Movant was convicted for a sex trafficking conspiracy – involving means of force, threats of force, fraud, coercion, or any combination thereof – to cause a person to engage in a commercial sex act.  18 U.S.C. § 1591(a).  The Court enhanced Movant's offense level based on a finding that the Movant's offense involved criminal sexual abuse, i.e., the use of force/threat to cause another to engage in a sexual act.  *See* 18 U.S.C. § 2241(a); U.S.S.G. § 2A3.1(b)(1).  Accordingly, under SORNA, Movant's crime of conviction appears to qualify as a "sex offense," and Movant appears to qualify as a "sexual offender" subject to registration requirements under SORNA.  Although the undersigned is not aware of a separate federal entity with which a person subject to SORNA must register,[17] a person who is subject to SORNA must comply with SORNA by registering in any state where he resides, is an employee, or is a student.  34 U.S.C. § 20913(a).

---

[17]     Federal law requires a sexual offender to register in the "jurisdiction" of conviction and each "jurisdiction" where the offender resides, 34 U.S.C. § 20913(a), and then defines jurisdiction to include states and various non-federal authorities, but does not include the United States as a separate "jurisdiction," 34 U.S.C. § 20911(10).  "There is no separate federal entity with which offenders are required to register in order to satisfy SORNA.  Rather, offenders satisfy SORNA requirements by registering with the same sorts of non-federal authorities who deal with registrations pursuant to state law."  *United States v. Collins*, No. CRIM.A. 6:13-00141, 2013 WL 5349109, at *1 (S.D. W. Va. Sept. 23, 2013).

22

As Movant is a Georgia resident, he must "register, and keep the registration current," in Georgia. *Id.* For convictions occurring before June 30, 2015, Georgia Sex Offender registration law does *not* categorize sex trafficking as a dangerous sexual offense, for purposes of defining a sexual offender who is subject to registration under Georgia law (and did not do so at the time Movant pleaded guilty). *See* O.C.G.A. § 42-1-12(a)(10)(A), (B), (B.1)(iii) and (a)(20); *see also* O.C.G.A. § 42-1-12(a)(7) (2005). Although Georgia law requires registration for a nonresident sexual offender who is "required to register as a sexual offender under federal law" and who changes his or her residence "to Georgia," it does not dictate the same for a resident of Georgia. O.C.G.A. § 42-1-12(e)(5),(6). Additionally, record evidence shows that legal counsel for the GBI reviewed Movant's file and determined that Movant is not required to register under Georgia law and that, in March 2017,

Movant was removed from the Georgia Sex Offender Registry.[18]  It is against this backdrop that Movant's ineffective assistance claim is analyzed.

As a factual matter, Movant's assertions – in his motion to vacate, in his statements to his Probation Officer, and at the hearing on remand – fail to convince the Court that counsel affirmatively advised Movant that he would not have to register as a sex offender.  Neither Mr. Harvey nor Ms. Hanson remembered advising Movant that he would not have to register, and *Padilla* – which, going forward, may influence counsel to consider providing advice on collateral consequences – was not decided until 2010.  It also is worth noting that SORNA was not enacted until after Movant entered his guilty plea, although the Georgia sex offender registry law was in effect. Further, during the recent hearing, Movant displayed a lack of credibility with his considerable waffling in regard to his previous statement under oath at his plea-

---

[18]     The Court notes that at least one court has held, in a situation where SORNA requires registration and the state registration system does not, that the sex offender is required to inform the state registry of any changes in his residency.  *United States v. Leach*, No. 3:09-CR-0007001RM, 2009 WL 3762331, at *4 (N.D. Ind. Nov. 6, 2009).

Movant appears to be in a similar situation.  Movant's particular registration obligations, however, are not before the Court, and the Court makes no decision in regard thereto.

AO 72A (Rev.8/8 2)

hearing (that the factual basis for his conviction was correct), and the Court finds that Movant's testimony is less than reliable.

Additionally, even if counsel advised Movant that he would not have to register, Movant fails to demonstrate that such advice was legally incorrect or deficient. In May 2006, at the time of Movant's guilty plea, if a defendant within the state of Georgia inquired about sex offender registration, reasonable counsel would have responded in regard to registration requirements under the relevant, existing law, which would have been Georgia law. The Court has reviewed Georgia law, set forth above. Based thereon and in accord with the opinion of legal counsel for the GBI, the Court concludes that advice – that Movant was not subject to Georgia's registration requirements – was legally correct, at the time Movant pleaded guilty and now.[19]

It is apparent that Movant's registration requirements were triggered by the enactment and retroactive application of SORNA, and the Court cannot find that Movant's counsel was deficient for failing to advise Movant on whether he would be

---

[19]    Georgia law is unambiguous that a pre-June 30, 2015, conviction for sex trafficking is not a dangerous sexual offense. The undersigned finds that the concerns in *Bauder* – a law that was being litigated and that might or might not apply to the offender – are not present here. Because SORNA had not been enacted at the time Movant pleaded guilty, it is not necessary to decide whether it creates any ambiguity in Georgia registration requirements that might require counsel to advise his client in regard thereto.

AO 72A
(Rev.8/8
2)

required to register under SORNA, which at the time Movant pleaded guilty on May 1, 2006, had not yet been enacted. *See United States v. Sirang*, No. CRIM.A. 1:92-CR-0376, 2007 WL 433091, at \*4 (N.D. Ga. Feb. 2, 2007) ("[T]he performance prong of *Strickland* does not require counsel to anticipate future Congressional enactments of law. *See United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (collecting extensive Eleventh Circuit case law and holding 'we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel').").  The Court also observes that, after SORNA became effective and was made retroactively applicable, Movant himself, after waiving his right to counsel on the matter, *agreed* to the modification of his supervised release to include a requirement that he comply with the sex offender contract (which required him to comply with the applicable law of sex offender registration).

Additionally, even if reasonable counsel should have advised Movant on the *possibility* of SORNA's enactment and application, the Court finds that Movant fails to show prejudice.  Respondent dismissed without prejudice the substantive charge against Movant, and the plea agreement and discussion at the plea hearing demonstrate that the substantive charge was omitted from the superseding indictment on the

26

understanding that Movant would cooperate and would be "exposed to lower penalties" – a five year maximum instead of up to forty years, with a fifteen year minimum.  (Plea Hr'g Tr. at 5.)  Had Movant turned down the plea offer, the Court is aware of no agreement which would have limited the government's ability to again charge Movant with the substantive count, which had been dismissed without prejudice.  Without the plea agreement, Movant would have risked exposure to the same registration requirements and to a much longer sentence (a minimum of fifteen years and up to forty years, with a likely guidelines range of 235 to 293 months).  The Court is aware of no contemporaneous evidence to show that Movant would have rejected the plea offer if at the time he pleaded guilty he had been advised of the possibility of SORNA, and Movant does not show that it would have been rational in the circumstances to turn down the plea offer.  Movant fails to demonstrate that his guilty plea was rendered invalid based on ineffective assistance of counsel in regard to registration requirements.  Movant has not met his burden to show that counsel was deficient and that he was prejudiced, and a decision on the application of *Padilla* and *Bauder* is not required.[20]

---

[20]      The Court observes, however, that the United States Supreme Court determined that the rule announced in *Padilla* (that plea counsel must advise client on collateral risk of deportation – a " 'unique' . . . [and] 'particularly severe' penalty, and

27

Furthermore, Movant has not demonstrated that but for counsel's alleged errors, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial.  As the transcript of the evidentiary hearing before the undersigned reflects, *even* if the Court credits Movant's testimony that (1) a number of the stipulated facts in his guilty plea to which he agreed were in fact untrue; (2) Movant advised his counsel that certain of the stipulated facts were not true, and (3) Movant was advised by Mr. Harvey that the guilty plea would not be accepted if he did not agree to the statements, (Mot. to Vacate Hr'g Tr. I at 12-14); nonetheless Movant went forward with entering his guilty plea.  "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."  *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true."  *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994); *see also United States v. Bandzul*, 652 Fed. Appx. 860, 861-62 (11th Cir. June 16, 2016) (holding that it was well within the district court's sound discretion to discredit Bandzul's contrary allegations in connection with his later motion to withdraw his

---

one 'intimately related to the criminal process' " – was a new rule which does not retroactively apply to pre-*Padilla* convictions. *Chaidez v. United States*, 568 U.S. 342, 352 (2013) (citations omitted).

guilty plea).  Movant's attempt to backtrack at the hearing before the undersigned

from the facts to which he stipulated at his guilty plea leads the Court to conclude that

he was more than willing to plead guilty to a potential five-year sentence and avoid

an even lengthier incarceration period, even though, as he now claims, he falsely

admitted to committing acts that he did not commit.  As a result, the Court concludes

that his  testimony that he would not have entered a guilty plea if he had known that

he would have to register as a sex offender is not credible, and his claim that Mr.

Harvey or Ms. Hanson misadvised him as to his registration requirements also rings

untrue.

## IV.    **Certificate of Appealability (COA)**

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must

issue or deny a certificate of appealability when it enters a final order adverse to the

applicant. . . . If the court issues a certificate, the court must state the specific issue or

issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will

issue a certificate of appealability "only if the applicant has made a substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The

applicant "must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong."  *Melton v. Sec'y, Fla.*

*Dep't of Corr.,* 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

It is recommended that a COA is unwarranted because it is not debatable that Movant fails to show that he received ineffective assistance of counsel in regard to his decision to plead guilty.  If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

**V.**   **Conclusion**

For the reasons stated above,

**IT IS RECOMMENDED** that Respondent's motion to dismiss for lack of jurisdiction, [Doc. 714], be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Movant's motion to vacate [Doc. 452], as remanded, [*see* Doc. 696], and a COA be **DENIED**.

30

The Clerk of Court is **DIRECTED** to withdraw the referral of the § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this  7th  day of  August , 2018.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

31